UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ZPS AMERICA, LLC an Indiana limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:12-cv-00952-RLY-TAB |
| HAMMOND ENTERPRISES, INC. a California corporation, | ) ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Hammond Enterprises, Inc. ("Hammond, Inc."), a California corporation, moves to dismiss the present action filed by ZPS America, LLC ("ZPS"), an Indiana limited liability company. Alternatively, Hammond, Inc. moves to transfer the action to the Northern District of California. For the reasons set forth below, the court **GRANTS** Hammond's motion to dismiss.

**I.    Background**

ZPS manufactures the Mori-Say TMZ 642 CNC machine ("TMZ machine"), a high-precision lathe that can be configured to manufacture various precision parts, in the Czech Republic. (Declaration of Olaf Tessarzyk ("Tessarzyk Dec.") ¶ 2; Declaration of Alan Hammond ("Hammond Dec.") ¶ 6). In early 2009, Olaf Tessarzyk, the president, chief executive officer, and managing partner of ZPS, contacted Alan Hammond, owner

1

and chief executive officer of Hammond, Inc., regarding a possible sale of a TMZ machine by ZPS to Hammond, Inc.  (Tessarzyk Dec. ¶ 3; Hammond Dec. ¶ 2).

In early March 2009, Tessarzyk made a sales call visit to the Hammond, Inc. factory in Pittsburgh, California, during which Hammond informed Tessarzyk that he needed a machine capable of producing two parts, a "body" and a "plug," each to be made of brass.  (Hammond Dec. ¶ 2).  Hammond explained that he had an established customer that required Hammond, Inc., to manufacture and ship to that customer 65,000 each of the body and plugs every month for the next several years.  (*Id*. ¶ 3).  To meet Hammond, Inc.'s contractual obligations to that customer, Hammond informed Tessarzyk that he needed a machine that was capable of working virtually around the clock.  (*Id*.). Tessarzyk assured Hammond that the TMZ machine would meet his high production needs.  (*Id*. ¶ 4).

After Tessarzyk prepared a document regarding the technical specifications and quote regarding a TMZ machine for Hammond, Inc., Hammond signed a purchase order for a machine from ZPS on June 1, 2009, for $1,419,000.  (Complaint, Ex. D).  Soon thereafter, Tessarzyk prepared a similar document regarding a second TMZ machine for Hammond, Inc.  (*Id*., Ex. F).  Hammond signed a purchase order for the second machine on August 19, 2009, for $1,525,686.  (*Id*., Ex. G).  Acceptance of the machines had to be done at ZPS Zlin's manufacturing facilities in Zlin, Czech Republic.  (*Id*., Ex. A; Tessarzyk Dec. ¶¶ 9-10).  The parties dispute whether this occurred in Zlin.  (*Compare* Hammond Dec. ¶ 6 (stating that all of the acceptance testing had to be done in Pittsburgh

due to product delays in Zlin) *with* Tessarzyk Dec. ¶ 10 (stating that all of the acceptance testing occurred in Zlin).

ZPS shipped the first TMZ machine to Hammond, Inc.'s facility in Northern California some time prior to February 2010, and shipped the second to Hammond, Inc.'s facility in June 2010. (Tessarzyk Dec. ¶¶ 11, 19). The parties generally dispute how the break down in their business relationship occurred. Hammond, Inc. contends that the TMZ machines never performed as specified. (Hammond Dec. ¶ 9). Consequently, representatives of ZPS and Hammond, Inc.'s employees met on a regular basis at Hammond, Inc.'s Pittsburgh facility in attempts to fix the problems with the machines. (*Id.*). ZPS contends that it quickly responded and addressed all of Hammond, Inc.'s concerns and worked diligently to keep Hammond, Inc. happy. (Tessarzyk Dec. ¶¶ 13, 21). ZPS also contends that from December 27, 2011 through March 21, 2012, Hammond, Inc. was not interested in working amicably with ZPS and demanded that it be allowed to return the TMZ machines. (*Id.*, Exs. 1-3).

Things came to a head on June 4, 2012. On that date, Hammond, Inc.'s lawyer sent Tessarzyk a letter stating, in pertinent part:

> It is clear to me and we will be able to prove that the capabilities, performance and reliability of these machines were misrepresented and that the machines have never functioned to the level that was promised – when they have functioned at all. The only thing I am interested in hearing back from you is that ZPS is prepared to make arrangements to accept the return of both machines. If we do not hear from you by Friday, June 15 [2012], that you are prepared to accept their return, we have been authorized to file a lawsuit against ZPS and will proceed to do so. Let us be clear: Hammond[, Inc.] does not wish to file a lawsuit against ZPS, but unless ZPS accepts the return of both machines, you will leave Hammond[, Inc.] no other choice.

(Complaint, Ex. M).  On June 14, 2012, ZPS, whose principal place of business is in Marion County, Indiana, filed a Complaint for breach of contract and declaratory judgment in Marion Circuit Court.  The declaratory judgment count asks the court to determine "that Hammond has accepted the Machines and is not entitled to revoke its acceptance pursuant to Ind. Code § 26-1-2-608" and "that ZPS justifiably refused to accept return of the Machines . . . ."  (Complaint ¶¶ 57-58).  The breach of contract count is premised on Hammond, Inc.'s purchase of two filter systems for the TMZ machine, the balance of which, ZPS alleges, is still owed by Hammond, Inc.  (*Id*. ¶¶ 46, 51-52).  On that same date, June 14, 2012, ZPS' lawyer sent Hammond a letter, with an attached copy of the Complaint, stating that "ZPS had no intention of allowing Hammond[, Inc.] to revoke its acceptance of the machines," and offering to settle matter.  (Declaration of Martin Greenman ("Greenman Dec."), Ex. A).  ZPS served the lawsuit on Hammond, Inc. by mail, which was received by Hammond, Inc.'s agent for service of process on June 26, 2012.  (*Id*. ¶ 3).

     On July 10, 2012, Hammond, Inc. filed a lawsuit against ZPS in the Northern District of California, seeking damages based on claims for negligent misrepresentation, revocation of acceptance, breach of contract, breach of express warranty, and breach of implied warranty.  (*Id*., Ex. B).  On July 12, 2012, Hammond, Inc. served ZPS with a summons and Complaint.  (*Id*., Ex. C).  On that same day, Hammond, Inc. removed the present action to this court asserting diversity jurisdiction.

**II.     Discussion**

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As is evident from the word "may," a federal district court is not required to determine the rights and legal relations of parties. *North Shore Gas Co. v. Salomon, Inc.*, 152 F.3d 642, 647 (7th Cir. 1998), *overruled on other grounds by Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983 (7th Cir. 2010). Instead, a federal district court has discretion to decline to hear a declaratory judgment action, even if the court has subject matter jurisdiction. *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). Hammond, Inc. argues the court should exercise its discretion and dismiss the Complaint on the grounds that Plaintiffs raced to the courthouse to deprive Hammond, Inc., the "natural plaintiff," of the forum of its choosing. ZPS vigorously opposes Hammond, Inc.'s motion.

Generally, if two actions are pending in two different courts that concern the same general claims, the first-filed case takes priority. *Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F.Supp.2d 912, 914 (N.D. Ind. 2000). The Seventh Circuit, however, "has never adhered to a rigid 'first to file' rule." *Tempco*, 819 F.2d at 750 (citation omitted). Courts generally "give priority to the coercive action[1] [over the declaratory judgment action], regardless of which case was filed first." *Research Automation, Inc. v.*

---

[1] A coercive action is, for example, an action for damages or an injunction. *Tempco*, 819 F.2d at 749.

*Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010). Courts also depart from the first-to-file rule if, as alleged here, the declaratory judgment action is filed in anticipation of litigation by the other party. *Tempco*, 819 F.3d at 749.

ZPS advances arguments under both exceptions to the first-to-file rule. They are addressed below.

### A. Coercive v. Declaratory Action Exception

ZPS argues that "although Count II of the Complaint is styled as a claim for declaratory relief, it is not a pure declaratory action because it seeks to clarify Plaintiff's right to its own coercive remedies under Article 2 (Sales) of the Uniform Commercial Code." (Pl.'s Resp. at 9). The list of potential remedies under Indiana Code Section 26-1-2-703 includes a seller's right to: "withhold delivery"; "stop delivery"; "resell"; "recover damages for nonacceptance"; and "cancel." IND. CODE § 26-1-2-703. ZPS argues that it "is precisely its right to these coercive remedies that Plaintiff has sought to have clarified" in its declaratory judgment action. (Pl.'s Resp. at 10).

There has been no allegation that Hammond, Inc. still owes ZPS any portion of the $3 million purchase price of these two machines. Thus, where the machines have been paid in full and remain in operation in California, these ostensible "coercive remedies" under Indiana Code Section 26-1-2-703 are inapplicable. Simply put, ZPS does not seek coercive relief under its declaratory judgment claim.

ZPS also argues that Count II of Hammond, Inc.'s Complaint for revocation of acceptance is the mirror-image of its claim for declaratory judgment, as both claims "seek a judicial declaration concerning the legal effect of Hammond, Inc.'s actions and

6

communications as to revocation of acceptance." ZPS thus contends that Hammond, Inc.'s claim for revocation of acceptance is in substance a claim for declaratory judgment. ZPS' argument fails for the simple reason that Hammond, Inc., unlike ZPS, does not seek a declaration of its rights; instead, it seeks damages, a return of the TMZ machines, and a refund of the purchase price. The court therefore finds that ZPS asserts a claim for declaratory judgment; Hammond, Inc. does not.

The court will address Hammond, Inc.'s claim for breach of contract in the following section.

### B. "Anticipatory Filing" Exception

An important case addressing the anticipatory filing exception is the Seventh Circuit's decision in *Tempco*. There, Tempco used an omega symbol on some of its products, which Omega Engineering ("Omega") believed to be an infringement of its trademark. *Id*. at 746-47. Omega sent Tempco a letter demanding that Tempco stop the allegedly infringing use. *Id*. at 747. After Tempco failed to respond, Omega sent another letter reiterating the demand. *Id*. Soon thereafter, Tempco informed Omega that it did not intend to comply with Omega's demand. *Id*. Omega responded with a letter stating that it had no other alternative but to bring an action against Tempco to protect its interests. *Id*. On the day Tempco received the letter, it filed a declaratory judgment action. *Id*. Omega's lawsuit followed four days later. *Id*.

Omega moved to dismiss Tempco's action on the ground that its own action involved the same issues, facts, and parties. *Id*. The district court granted the motion, and the Seventh Circuit Court of Appeals affirmed. *Id*. at 747, 750. The Court held that

7

where "the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." *Id*. at 749.

In arriving at its conclusion, the Court examined the purposes of declaratory judgment actions. They are to "clarify[] and settl[e] the legal relations at issue" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id*. (internal quotation marks and citation omitted). The Court explained that a declaratory judgment action is appropriate if the parties' "controversy has ripened to a point where one of the parties could invoke a coercive remedy . . . but has not done so." *Id*. In other words, a declaratory judgment action is appropriate to "prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Id*. The Court found Omega had not engaged in such conduct; instead, it "promptly filed suit to enforce its claim that Tempco had infringed its trademark." *Id*. The Court therefore concluded that Tempco's first-filed declaratory judgment action "would serve no useful purpose and was properly denied." *Id.*

Despite ZPS' arguments to the contrary, the facts before the court are materially similar to *Tempco*. ZPS received Hammond, Inc.'s letter on June 4, 2012, which set a June 15, 2012 deadline for a response. Rather than respond to Hammond, Inc.'s letter, ZPS filed suit on June 14, 2012, and provided a copy of the Complaint by email to counsel for Hammond, Inc., along with a letter seeking to settle the very lawsuit it had just filed. Only after securing a favorable forum did ZPS offer to negotiate a settlement.

8

This is the type of conduct addressed by the *Tempco* Court as warranting dismissal of a declaratory judgment action as an improper anticipatory filing.

Nevertheless, ZPS argues that the facts in *Tempco* are distinguishable from the present case. First, unlike in *Tempco* where only a month transpired between the initial allegations of infringement and the filing of a lawsuit, "Hammond[, Inc.] continually engaged in accusatory conduct for almost six months and demanded return of the Machines without taking any steps to ship them back to Plaintiff, and threatened litigation for almost two years." (Pl.'s Resp. at 2). Whether or not Hammond, Inc. "continually engaged in accusatory conduct" or not, the fact remains that, rather than respond to Hammond, Inc.'s letter, ZPS chose to file a lawsuit the day before Hammond, Inc.'s June 15 deadline. This sequence of events leads the court to but one conclusion -- that ZPS filed its Complaint in anticipation of Hammond, Inc.'s lawsuit.

Second, ZPS argues that in *Tempco*, Omega's suit was filed only four days after Tempco filed suit, while twenty-six days elapsed between ZPS' June 14 filing and Hammond, Inc.'s July 10 filing. From this disparity in time, ZPS cites *Indianapolis Motor Speedway Corp. v. Polaris Indus., Inc.*, 2000 WL 777895 (S.D. Ind. April 28, 2000) for the proposition that Hammond, Inc. should be seen in the role of wrongfully attempting to control the choice of forum because it was aware of the first-filed suit when it filed its own.

The declaratory judgment action at issue in *Indianapolis Motor Speedway* was filed after negotiations between the parties broke down and "did not come on the heels of [Indianapolis Motor Speedway's] assertion of right." *Id*. at * 4. In other words, there

9

was no letter containing a plain declaration of intent to file suit with a deadline for a response. On that basis, the district court distinguished the facts of *Indianapolis Motor Speedway* from those in *Tempco*. *Id*. The court's reasoning applies with equal force here. In addition, ZPS' argument does not advance the policy enunciated in *Tempco*, as it would prevent a party who was aware of a first-filed declaratory judgment action from claiming that it was an improper anticipatory filing.

Accordingly, for the reasons set forth above, the court declines to exercise jurisdiction over ZPS' declaratory judgment action.

### C.  ZPS' State Court Claim

Having found ZPS' declaratory judgment action was an impermissible anticipatory filing, the court must next address ZPS' remaining state law claim for breach of contract. This claim is premised on ZPS' allegation that Hammond, Inc. owes it $34,850 for two filter systems, the balance of which was due in November 2010. On two occasions, the Northern District of Illinois was faced with a similar situation and dismissed the state law claim without prejudice for three reasons: (1) as the *Tempco* Court stated, the fact that a plaintiff filed a declaratory judgment action first does not give it a right to choose the forum; (2) the plaintiff's additional claims for affirmative or coercive relief may be filed as counterclaims in the second-filed action; and (3) the plaintiff should not be rewarded for filing a declaratory judgment action as a pre-emptive strike. *Natural Gas Pipeline of America v. Union Pacific Resources Co.*, 750 F.Supp. 311, 314 (N.D. Ill. 1990); *Associated Mills v. Regina*, 675 F.Supp. 446, 448 (N.D. Ill.

1987).  The court finds the reasoning set forth in *Natural Gas Pipeline* and *Associated Mills* highly persuasive, and adopts it as its own.

### D.      Motion to Transfer

In light of the court's ruling, the court need not reach Hammond, Inc.'s alternative motion to transfer.

## III.     Conclusion

The court finds that the action pending is a pre-emptive attempt by ZPS to secure venue in anticipation of litigation by Hammond, Inc.  The court therefore declines to exercise its jurisdiction over ZPS' declaratory judgment claim and dismisses, without prejudice, ZPS' breach of contract claim.  ZPS may refile that claim as a counterclaim in the Hammond, Inc. action pending in the Northern District of California.

**SO ORDERED** this 4th  day of March 2013.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.